IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEXANDER HANSEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 11-1212 |
| ) | |
| CAROLYN W. COLVIN,[1] ACTING ) | Judge Mark R. Hornak |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |

MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

I. **Introduction**

Plaintiff Alexander Hansen ("Hansen") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act ("Act") [42 U.S.C. §§ 401-433]. The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. ECF Nos. 17 & 19. For the reasons that follow, the Commissioner's motion for summary judgment (*ECF No. 19*) will be denied, and Hansen's motion for summary judgment (*ECF No. 17*) will be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's administrative decision, and a remand for

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, succeeding former Commissioner Michael J. Astrue. Social Security History-Social Security Commissioners, http://www.ssa.gov/history/commissioners.html (as visited on April 9, 2013). Consequently, Acting Commissioner Colvin is now the official-capacity defendant in this action. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); FED. R. CIV. P. 25(d).

1

further proceedings. The Commissioner's decision will be vacated, and the case will be remanded for further consideration of Hansen's application.[2]

## II. **Procedural History**

Hansen initially applied for disability insurance benefits on August 10, 2004, alleging that he had been "disabled" since April 15, 2004. R. at 75. After the claim was denied by Pennsylvania's Bureau of Disability Determination ("Bureau"), Hansen requested a hearing before an administrative law judge. On May 6, 2005, Hansen appeared before Administrative Law Judge Alma S. Deleon and testified about his impairments. R. at 75. In a decision rendered on July 23, 2005, Judge Deleon determined that Hansen was not statutorily "disabled." R. at 72-82.

Hansen protectively filed a new application for disability insurance benefits on October 23, 2007, alleging that he had become "disabled" on March 31, 2007. R. at 11, 141, 182. The Bureau denied the application on January 23, 2008. R. at 89, 95. Hansen responded on February 27, 2008, by filing a timely request for an administrative hearing. R. at 100-101. On October 27, 2009, a hearing was held in Johnstown, Pennsylvania, before Administrative Law Judge ("ALJ") Richard P. Gartner. R. at 29. Hansen, who was assisted by a lay representative,[3] appeared and testified at the hearing. R. at 32-63. Irene Montgomery ("Mongomery"), an impartial vocational expert, also testified at the hearing. R. at 61-67. In a decision dated December 15, 2009, the ALJ determined that Hansen was not "disabled" within the meaning of the Act. R. at 8-22. On January 22, 2010, Hansen sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. R. at 5-6. The Appeals

---

[2] The applicable statutory provision provides the Court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).
[3] The Act permits non-attorneys to represent claimants in Social Security disability proceedings conducted before the Commissioner. 42 U.S.C. § 406(a)(1).

Council denied the request for review on June 23, 2011, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. R. at 1.

The statute authorizing judicial review of a decision denying an application for benefits provides that a "civil action" seeking such review must be "commenced within sixty days after the *mailing* to [the claimant] of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g)(emphasis added). The Commissioner's regulations permit a claimant to commence an action challenging a denial of benefits within sixty days after his or her *receipt* of a decision by the Appeals Council denying a request for review. 20 C.F.R. § 422.210(c). A claimant is presumed to have received notice of such a decision within five days of its issuance. *Id.* Acting through an attorney, Hansen attempted to commence this action on August 25, 2011, by filing a motion to proceed *in forma pauperis* through the Court's Electronic Case Filing ("ECF") system. ECF No. 8-1. The motion was accompanied by a proposed complaint. For reasons that are not entirely clear from the record, the filing was not properly received and docketed. The motion was refiled on September 20, 2011, shortly after Hansen's counsel had been made aware of the situation. ECF No. 1; ECF No. 8 at 2. On September 26, 2011, Judge Terrence F. McVerry denied Hansen's motion for leave to proceed *in forma pauperis*. The required filing fee was paid on October 4, 2011, and Hansen's complaint was docketed. ECF No. 5.

The Commissioner filed a motion to dismiss on November 9, 2011, contending that this action was barred by the applicable sixty-day statute of limitations.[4] ECF Nos. 6 & 7. On December 2, 2011, the case was reassigned to the undersigned Judge. ECF No. 9. The

---

[4] Although Federal Rule of Civil Procedure 8(c)(1) classifies a statute-of-limitations defense as an affirmative defense that must be raised in an answer, the United States Court of Appeals for the Third Circuit permits a defendant to raise the defense by motion under certain circumstances. FED. R. CIV. P. 8(c)(1); *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002); *cert. denied*, 540 U.S. 826 (2003).

3

Commissioner's motion to dismiss was denied in a memorandum opinion and order dated April 30, 2012. ECF Nos. 10 & 11. Relying on *Bowen v. City of New York*, 476 U.S. 467, 478-480, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986), and *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994), the Court concluded that the sixty-day limitations period had been equitably tolled between August 25, 2011, and September 20, 2011. ECF No. 10 at 6-8. It was also noted that, under *McDowell v. Delaware State Police*, 88 F.3d 188, 191 (3d Cir. 1996), the period of time elapsing between September 20, 2011, and October 4, 2011, had no bearing on the issue of timeliness. *Id.* at 4-5.

The Commissioner answered Hansen's complaint on June 18, 2012. ECF No. 14. In conformity with the Act, the Commissioner's answer was accompanied by "a certified copy of the transcript of the record." ECF No. 15; 42 U.S.C. § 405(g). On July 24, 2012, the parties filed cross-motions for summary judgment. ECF Nos. 17 & 19. Those motions are the subject of this memorandum opinion.

### III. Standard of Review

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable

4

amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

5

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court has summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing

6

> with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

### IV.   The ALJ's Decision

In his decision, the ALJ determined that Hansen had not engaged in substantial gainful activity subsequent to his alleged onset date. R. at 13. Hansen was found to be suffering from sleep apnea, osteoporosis, a cervical strain, hypertension, hyperlipidemia, occipital neuralgia, a hiatal hernia, a history of calculus disease, benign prostatic hyperplasty, major depressive disorder, and anxiety. R. at 13. These impairments were deemed to be "severe" under the Commissioner's regulations. R. at 13; 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c). The ALJ concluded that Hansen's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 13-16.

In accordance with 20 C.F.R. § 404.1545, the ALJ assessed Hansen's "residual functional capacity"[5] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he is limited to occasional postural maneuvers, such

---

[5] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

as balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs; must avoid repetitive motions of the neck such as rotation; is limited to occasional overhead reaching with the upper bilateral extremities to include the operation of hand levers; must avoid concentrated exposure to cold temperature extremes and extreme wetness; is limited to occupations which do not require exposure to dangerous machinery and unprotected heights; and due to pain, is limited to simple, routine, repetitive tasks not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work-place changes.

R. at 16. Hansen had "past relevant work"[6] experience as an overhead crane operator, a slitting machine operator, and a truck driver. R. at 61-64. In response to a hypothetical question describing an individual with the abilities and limitations reflected in the ALJ's residual functional capacity assessment, Montgomery testified that the described individual could not perform the duties of Hansen's prior positions. R. at 64-65. Therefore, it was determined that Hansen could not return to his past relevant work. R. at 20.

Hansen was born on February 6, 1957, making him fifty years old on his alleged onset date and fifty-two years old on the date of the ALJ's decision. R. at 20, 32, 141. He was classified as a "[p]erson closely approaching advanced age" under the Commissioner's regulations. 20 C.F.R. § 404.1563(d). He had a high school education and an ability to communicate in English. R. at 35, 171, 180; 20 C.F.R. § 404.1564(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Hansen could work as an inspector of plastics or medical products, an assembler of small parts,

---

[6] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

or a weigher/scales operator. R. at 21. Montgomery's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A).[7] R. at 65-66.

## V. Discussion

Hansen graduated from high school in 1975. R. at 180. He apparently earned some college credits without securing a degree. R. at 236. In 1977, Hansen started to work at Allegheny Ludlum's steel mill in Brackenridge, Pennsylvania. R. at 37. He remained an employee of Allegheny Ludlum for thirty years. R. at 37-38. Hansen completed an eight-month "small engine repair" training program in 1996. R. at 35, 180. He spent the last twelve years of his time at Allegheny Ludlum working as an overhead crane operator. R. at 37. Hansen "retired" on March 31, 2007, because he was "having too many problems" and no longer trusted himself to safely operate a crane.[8] R. at 40, 172. He receives pension payments in the amount of $28,000.00 per year. R. at 41. Hanson's alleged onset date corresponds with the date of his "retirement." R. at 40, 141, 172.

Dr. Gary Breisinger, a licensed psychologist, started to counsel Hansen in September 2007. R. at 174. Hansen attended counseling sessions every two weeks. R. at 174. On December 10, 2007, Dr. Breisinger reported that Hansen was "moderately" limited in his ability to respond appropriately to changes in a routine work setting and only "slightly" limited in his abilities to respond appropriately to work pressures in a usual work setting and interact appropriately with supervisors, co-workers, and members of the general public. R. at 376. Dr.

---

[7] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

[8] Hansen was on medical leave in 2004 and 2005 because of neck pain and dizziness. R. at 38-39. Those problems triggered his initial application for disability insurance benefits, which was denied on June 23, 2005. R. at 38-39, 72-82. In her decision denying that application, Judge Deleon stated that Hansen was suffering from "a balance disorder of uncertain etiology." R. at 77.

Breisinger also indicated that Hansen's abilities to understand, remember and carry out instructions were not affected by his mental impairments. R. at 376.

Dr. Michelle Santilli, a non-examining psychological consultant, opined on January 17, 2008, that Hansen was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments." R. at 421. In the narrative portion of her consultative report, Dr. Santilli stated as follows:

> The claimant's basic memory processes are intact. He can perform simple, routine, repetitive work in a stable environment. He can understand, retain, and follow simple job instructions, i.e., perform one and two step tasks. He can make simple decisions. His ADL's and social skills are functional from a psychiatric standpoint. He can sustain an ordinary routine without special supervision. The limitations resulting from the impairment do not preclude the claimant from performing the basic mental demands of competitive work on a sustained basis.

R. at 421. Hansen's subjective complaints were deemed by Dr. Santilli to be only "partially credible." R. at 421.

The ALJ restricted Hansen to "simple, routine, repetitive tasks not performed in a fast-paced production environment, involving only simple[] work-related decisions" and relatively few workplace changes. R. at 16. These limitations were attributed to Hansen's "pain" rather than to his depression or anxiety. R. at 16, 65. Nonetheless, they were more than sufficient to account for the minimal deficiencies identified by Dr. Breisinger and Dr. Santilli. Hansen does not appear to challenge the administrative findings relating to his mental limitations. ECF No. 18. For this reason, the relevant inquiry centers on his physical limitations.

On January 10, 2008, Dr. Hadi A. Firoz performed a consultative physical examination of Hansen in connection with his application for disability insurance benefits. R. at 396-404. After completing the examination, Dr. Firoz reported that Hansen's lifting and carrying abilities

exceeded those of an individual performing "medium"[9] work. R. at 396. Dr. Firoz indicated that Hansen could stand or walk for six hours during the course of an eight-hour workday. R. at 396. Hansen's sitting, pushing and pulling abilities were deemed to be unlimited. R. at 396. No additional physical, postural or environmental restrictions were identified. R. at 397. Charles Wansor ("Wansor"), a non-examining medical consultant, opined on January 18, 2008, that Hansen could engage in an unrestricted range of "light"[10] work activities. R. at 422-428.

Dr. Debra R. McFadden was Hansen's primary care physician until August 2007. R. at 175-176. In a residual functional capacity questionnaire completed on July 31, 2008, Dr. McFadden indicated that Hansen could handle the lifting and carrying demands of "light" work. R. at 462. Nevertheless, she reported that he could only stand or walk for up to two hours during the course of a standard workday. R. at 461. Dr. McFadden responded in the affirmative when asked whether Hansen would need a job permitting him to sit, stand or walk at will. R. at 462. She asserted that Hansen's pain would "[c]onstantly" be severe enough to interfere with the attention and concentration that he would need to perform simple work-related tasks. R. at 461. Dr. McFadden predicted that Hansen's impairments would force him to miss one day of work per month if he were to be employed on a full-time basis. R. at 463. In any event, she found him to be capable of performing the duties of low-stress jobs. R. at 461.

Dr. Mark Biedrzycki apparently became Hansen's primary care physician at some point.[11] In a residual functional capacity questionnaire dated October 3, 2009, Dr. Biedrzycki declared Hansen to be incapable of performing even low-stress jobs on a full-time basis. R. at

---

[9] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).
[10] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).
[11] At the hearing, Hansen described Dr. Biedrzycki as his "family doctor." R. at 41.

525. Dr. Biedrzycki indicated that Hansen could sit, stand or walk for only two hours per workday, and that his lifting and carrying abilities were barely sufficient to satisfy the demands of "sedentary"[12] work. R. at 525-526. Like Dr. McFadden, Dr. Biedrzycki responded affirmatively when asked whether Hansen would need an accommodation permitting him to sit, stand or walk at his option. R. at 526. Dr. Biedrzycki suggested that if Hanson were to be gainfully employed, his impairments would necessitate more than four absences per month. R. at 527. Montgomery testified that ten to fifteen absences per year would compromise an individual's ability to maintain a full-time job. R. at 67.

Hansen testified that, on a typical day, he would spend roughly five and a half hours lying on his recliner. R. at 59. He stated that he could not sit for more than thirty minutes without having to get up and walk around. R. at 60. Hansen explained that he could usually stand still for up to ten minutes and walk for up to fifteen minutes. R. at 60. He also complained of constant headaches. R. at 59.

Under the Commissioner's regulations, a treating source's opinion is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [a claimant's] case record." 20 C.F.R. § 404.1527(c)(2). In his decision, the ALJ declined to afford controlling weight to Dr. Biedrzycki's assessment. R. at 18-19. Even when a treating source's opinion is not controlling, however, it must be given some consideration. *Gonzalez v. Astrue*, 537 F.Supp.2d 644, 660 (D.Del. 2008). Although the ALJ stated that Dr. Biedrzycki's opinion was

---

[12] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

"inconsistent with the other evidence in the record," he did not explain the extent to which that opinion was factored into the assessment of Hansen's residual functional capacity. R. at 19.

The ALJ seized on Dr. McFadden's suggestion that Hansen was capable of performing the duties of low-stress jobs and declared her assessment to be "persuasive." R. at 19. Stating that Dr. McFadden had found Hansen to be capable of performing work at the "light exertional level," the ALJ described that assessment as "consistent with the diagnostic studies and other substantial evidence of record." R. at 19. Nonetheless, an individual performing "light" work may be expected to engage in "a good deal of walking or standing." 20 C.F.R. § 404.1567(b). Dr. McFadden reported that Hansen could stand or walk for no more than two hours over the course of a standard workday, and that he could not stand for more than five minutes at a time. R. at 461. The mere fact that she found him to be capable of performing the lifting and carrying duties of "light" work does not mean that she believed him to be capable of engaging in the standing and walking frequently required of individuals working at that level of exertion. Although the ALJ reduced the range of available work by incorporating several physical, postural and environmental limitations into his residual functional capacity assessment, none of those limitations pertained to Hansen's sitting, standing and walking abilities. R. at 16.

The United States Court of Appeals for the Third Circuit generally looks with disfavor on administrative decisions which credit the opinions of non-examining consultants over those of treating physicians. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008). In this case, the ALJ accorded "great weight" to the assessment prepared by Wansor. R. at 19. That assessment did not reflect the sitting, standing and walking restrictions identified by Dr. Biedrzycki and Dr. McFadden in their questionnaires and described by Hansen at the

hearing. R. at 423. The results of Dr. Firoz's consultative physical examination were never discussed by the ALJ.[13]

In order to facilitate the judicial review contemplated by the Act, an administrative law judge must explain his or her reasons for rejecting evidence that favors a claimant's position. *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 121 (3d Cir. 2000). When conflicting medical opinions appear in the record, the administrative law judge is ordinarily "free to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). In taking that step, however, the administrative law judge must explain his or her reasons for rejecting an assessment supporting a finding of statutory "disability" in favor of an assessment suggesting that the claimant can work. *Reefer v. Barnhart*, 326 F.3d 376, 382 (3d Cir. 2003).

The ALJ appears to have relied on Dr. McFadden's opinion as his primary basis for rejecting Dr. Biedrzycki's opinion. R. at 18-19. The problem with the ALJ's conclusion is that both Dr. McFadden and Dr. Biedrzycki found Hansen to be incapable of engaging in the standing and walking activities ordinarily necessary for the performance of "light" work. R. at 461, 525. Dr. McFadden's assessment provided the ALJ with no basis for rejecting Dr. Biedrzycki's assertion that Hansen could only stand for two hours over the course of an eight-hour workday. R. at 525. Indeed, Dr. McFadden reported that Hansen could only stand for up to five minutes at a time. R. at 461. Dr. Biedrzycki indicated that Hansen could stand for up to ten minutes at a time. R. at 525. In this particular respect, the assessment completed by Dr.

---

[13] The report of Dr. Firoz's examination appears in the record as Exhibits 20F and 21F. R. at 396-404. Those exhibits are not cited in the portion of the ALJ's decision assigning "great weight" to "the residual functional capacity assessments completed by the state agency and other program physicians and mental health consultants." R. at 19. Only Exhibits 22F, 23F and 24F are cited. R. at 19. Those exhibits contain only the assessments provided by Dr. Santilli and Wansor. R. at 405-428. Moreover, the ALJ referred to the relevant medical opinions as "expert medical opinions of non-examining sources." R. at 19. Dr. Firoz was an examining source, since his assessment was based on the results of a physical examination performed on January 10, 2008. R. at 396-404.

14

McFadden was more restrictive than the assessment completed by Dr. Biedrzycki. Furthermore, Dr. McFadden and Dr. Biedrzycki both expressed the view that Hansen would need to sit, stand or walk at his option. R. at 462, 526. Hansen's testimony at the hearing provided additional support for that view. R. at 60.

The sitting, standing and walking limitations described by Dr. McFadden, Dr. Biedrzycki and Hansen are important for several reasons. Given Hansen's age, a restriction limiting him to "sedentary" work would compel a finding of "disabled" under Medical-Vocational Rule 201.14. 20 C.F.R. Part 404, Supart P, Appendix 2, Table No. 1, Rule 201.14. Even if the proposed sit/stand option is properly viewed as a limitation diminishing the range of "light" work available to Hansen, the testimony of a vocational expert would be needed to establish the availability of jobs in the national economy consistent with that limitation. The Dictionary of Occupational Titles does not make reference to a sit/stand option. *Conn v. Astrue*, 852 F.Supp.2d 517, 528 (D.Del. 2012). Finally, any error in the ALJ's underlying residual functional capacity assessment would undercut the ability of Montgomery's testimony to satisfy the Commissioner's burden of production in this case, since the ALJ's hypothetical question to Montgomery directly corresponded with his subsequent residual functional capacity finding. R. at 16, 64-65; *Rutherford v. Banrhart*, 399 F.3d 546, 554, n. 8 (3d Cir. 2005).

Relying on Dr. Firoz's assessment, the Commissioner maintains that the ALJ was entitled to reject the sitting, standing and walking limitations found by Dr. McFadden and Dr. Biedrzycki. ECF No. 21 at 4-5. The problem with this argument is that the ALJ *did not* credit Dr. Firoz's examination findings over the assessments provided by Dr. McFadden and Dr. Biedrzycki. Instead, he rejected Dr. Biedrzycki's assessment by mischaracterizing Dr.

15

McFadden's assessment. R. at 18-19. The Court cannot "rectify this error by relying on medical records found in its own independent analysis."[14] *Fargnoli*, 247 F.3d at 44, n. 7.

Since the ALJ's decision is partially based on a mischaracterization of Dr. McFadden's questionnaire, it is not "supported by substantial evidence." 42 U.S.C. § 405(g). The remaining question is whether benefits should be awarded to Hansen at this time, or whether the Commissioner should be afforded another opportunity to consider Hanson's application. A judicially-ordered award of benefits is warranted only where "the evidentiary record has been fully developed," and where "the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D.Pa. 2010). Hansen cannot satisfy this standard on the basis of the existing record.

Although the ALJ failed to properly consider whether Hansen's impairments limited his sitting, standing and walking abilities, the record does not conclusively establish the need for a sit/stand option. After completing his consultative physical examination, Dr. Firoz reported that Hansen could sit without limitation, and that he could stand or walk for up to six hours throughout the course of a typical workday. R. at 396. The mere fact that the ALJ *did not* credit Dr. Firoz's findings over those of Dr. McFadden and Dr. Biedrzycki does not mean that he *could not* have done so. The opinions expressed by Hansen's treating physicians do not inevitably

---

[14] The statute authorizing judicial review of the Commissioner's decision provides the Court with the power to enter a judgment "upon the pleadings and transcript of the record." 42 U.S.C. § 405(g). Because the "transcript of the record" can be considered, the Commissioner suggests that the ALJ's decision in this case can be affirmed on the basis of Dr. Firoz's examination findings even though those findings were never addressed by the ALJ. ECF No. 21 at 2-3, n. 1. The Court acknowledges that the ALJ's decision must be considered in relation to the evidentiary record as a whole, and that the "transcript of the record" may be used to put the ALJ's statements into context. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 204 (3d Cir. 2008). Nevertheless, there is a difference between using the record to *interpret* the ALJ's decision and using the record to *fix* that decision. The Court will not accept the Commissioner's invitation to cross that line. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005)(remarking that "the district court considers and reviews only those findings upon which the ALJ based the decision, and cannot rectify errors, omissions or gaps therein by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ").

control the assessment of his residual functional capacity. *Brown v. Astrue*, 649 F.3d 193, 196, n. 2 (3d Cir. 2011).

It is also worth noting that, in some respects, Dr. McFadden's report appears to be inconsistent with the evidentiary record. Dr. McFadden stated in her questionnaire that the "symptoms *and limitations*" described therein had been present since 1987. R. at 463 (emphasis in original). If that is the case, Hansen spent twenty years working for Allegheny Ludlum *with those limitations*. R. at 37. Dr. McFadden's report described limitations extending beyond those contained in the ALJ's residual functional capacity assessment. R. at 16, 460-463. When the ALJ's eventual findings were recited at the hearing, Montgomery testified that the individual described by the ALJ could not perform the duties of Hansen's prior jobs. R. at 64-65. If Hansen was restricted to the degree (and for the duration) suggested by Dr. McFadden, it is difficult to fathom how he could have continued to perform his duties at Allegheny Ludlum for two decades. It will be for the Commissioner to determine, in the first instance, how the inconsistencies in Dr. McFadden's report should be reconciled.

Hansen must be afforded "an opportunity to be heard" during the course of the upcoming administrative proceedings. *Thomas v. Commissioner of Social Security Administration*, 625 F.3d 798, 800-801 (3d Cir. 2010). The Court expresses no opinion as to whether Hansen is in need of a sit/stand option, or as to whether he has functional limitations extending beyond those found by the ALJ. It suffices to say that since the ALJ based his decision on a mischaracterization of Dr. McFadden's assessment, the Commissioner's decision denying Hansen's application for disability insurance benefits must be vacated. *Diaz*, 577 F.3d at 504-505. On remand, the Commissioner will need to determine the relative weight of each medical

opinion, and the extent to which the restrictions resulting from Hansen's impairments prevent him from performing the duties of jobs existing in the national economy.

## VI. Conclusion

The Commissioner's motion for summary judgment (*ECF No. 19*) will be denied. Hansen's motion for summary judgment (*ECF No. 17*) will be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's administrative decision, and a remand for further proceedings. The Commissioner's "final decision" in this case will be vacated, and the case will be remanded for further consideration of Hansen's application for disability insurance benefits. No opinion is expressed as to whether Hansen was "disabled" during the period of time in question, or as to whether the ALJ's factual findings could have been sustained on the basis of evidence appearing in the record but not discussed in his decision.

Mark R. Hornak
United States District Judge

cc:   All counsel of record